Filed 3/7/23  Reeves v. City of Newport Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KYLE REEVES, | |
| Plaintiff and Appellant, | G060740 |
| v. | (Super. Ct. No. 30-2020-01176858) |
| CITY OF NEWPORT BEACH, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.

J.M. O'Connor Law Group and Joseph M. O'Connor for Plaintiff and Appellant.

Aleshire & Wynder, Tiffany J. Israel and Dong-Youl Dennis La for Defendant and Respondent.

The approved plans for Kyle Reeves's home in Newport Beach (the City) called for a third floor loggia without windows or doors.  Reeves installed windows and a sliding door to keep out the rain.  The City's building official determined the loggia must remain open to comply with the City's building codes and planning and zoning codes.  Reeves appealed to the City's Building and Fire Board of Appeals (the Board), which upheld the building official's decision.

Reeves then filed a petition for a writ of administrative mandamus in the trial court, which denied the petition.  We affirm and conclude:

1.  The City staff's failure to provide certain documents from Reeves to the Board was not prejudicial.

2.  The Board was neither provided with nor based its decision on an improper theory.

3.  The Board did not act outside its authority.

4.  Substantial evidence supports the Board's decision.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In June 2016, Reeves filed a planning permit application with the City to demolish an existing single family dwelling and construct a new three-story single family residence on the site.  The plans for the new construction included a roofed deck area or loggia on the third floor.  On October 13, 2017, the City's building division issued a construction permit.

In December 2018, Reeves installed glass windows and a sliding glass door on the loggia.  The windows and door were not part of the original approved plans.

On July 1, 2020, the City initially approved a final inspection for issuance of a Certificate of Occupancy, but on the same day learned Reeves had added an "illegal enclosure" to the loggia "by adding two windows and a sliding glass door."  The installation of the windows and door affected the building's gross floor area limits and

2

therefore required new submissions to meet planning and zoning requirements. The City's building inspector therefore ordered the electricity and gas meters to be "pulled," preventing occupancy.

On August 4, 2020, the City's chief building official, Samir Ghosn, inspected the property after Reeves removed the windows and the glass from the sliding door, but left the sliding door track in place. After the inspection, the City required Reeves to remove the sliding door track and add drainage to the loggia area. Alternatively, the City advised Reeves he could request a variance from the planning department. Reeves never submitted revised plans or an application for a variance.

Ghosn advised Reeves in a letter dated September 17, 2020, that enclosing the loggia with windows and a sliding door was "contrary to the approved plans for the project," and a certificate of occupancy would not be issued until the sliding glass door track was removed and a water drainage system implemented. Ghosn's letter also advised Reeves a temporary certificate of occupancy would be issued but would expire and would not be renewed if Reeves failed to "promptly take steps to address the water drainage issue."

On September 30, 2020, Reeves submitted an appeal to the Board. Specifically, Reeves advised the Board he was appealing from the "letter from Samir Ghosn, dated September 17, 2020 [that] 'loggia must remain open to comply with local zoning and building codes' and 'water drainage must be addressed.'" (Some capitalization omitted.) The City's staff recommended the Board uphold Ghosn's determination. After a hearing before the Board on November 17, 2020, the Board did so.

The Board's decision reads in relevant part as follows: "The Building Official's determination is that drainage is required for the Property's third floor loggia by the California Residential Building Code and that the loggia's sliding door track was

3

contrary to the approved plans, and accordingly [Reeves] was required to install a method or system of drainage and remove the sliding door track.

"The Board reviewed the evidence submitted by [Reeves], City of Newport Beach staff, and the public, and heard testimony, including public comments that the Coastal Development Permit dated May 2017, clearly indicates that the loggia openings would remain open and that the structure as built does not comply with the Coastal Commission approval.

"Having fully considering the matter, the Board finds that the window schedule and door schedule for the approved plans listed the window and entry openings to be cased openings, that the plans did not show glazing for the windows and installation of a door for the entry, and that the plans showed the loggia to be an exterior space. Accordingly, the Board affirms the Building Official's determination requiring [Reeves] to provide adequate drainage method or devices to the loggia that is exposed to weather as required by the California Residential Building Code and to remove the sliding door track."

On December 31, 2020, Reeves filed a petition in the trial court for administrative writ of mandate under Code of Civil Procedure section 1094.5. The trial court denied the petition, and entered judgment in favor of the City. Reeves's notice of appeal was filed prematurely. We exercise our discretion to treat the notice of appeal as having been filed immediately after the entry of judgment. (Cal. Rules of Court, rules 8.104(d) & 8.308(c).)

4

DISCUSSION

I.

EVEN IF REEVES'S SUPPLEMENTAL EVIDENCE WAS NOT PROPERLY SUBMITTED TO THE

BOARD, THERE IS NO PREJUDICE

Reeves argues he was denied due process because not all of his documents were provided to the Board.[1] Reeves asked the trial court to remand to the Board to reconsider the matter. The trial court denied that request, but "considered all of the documents which [Reeves] indicated were part of the record, but which he was concerned did not make it into the record, including the expert report from Mr. Daleo."

Reeves now asks this court to order the matter remanded to the Board for the same reason. Remand to the Board by the trial court is permissible when relevant evidence was available but was not provided to the administrative agency. (Code Civ. Proc., § 1094.5, subd. (e).)

The City contends Reeves has not proven the documents in question were not before the Board. The administrative record contains a communication from the City's staff advising Reeves's counsel those documents "will be given to the Board prior to the meeting." However, they are not part of the certified administrative record. It is, therefore, a fair inference they were not before the Board at the hearing.[2]

Assuming the documents in question were not before the Board at the hearing, Reeves nevertheless suffered no prejudice. (See Cal. Const., art. VI, § 13; *Soule*

---

[1] The documents in question are (1) a revised copy of Reeves's legal brief to the Board, (2) the recommendation to the Board of Reeves's expert witness, Chuck Daleo, and (3) Daleo's curriculum vitae.

[2] The City also contends Reeves should have sought to augment the administrative record in the trial court. That argument assumes the documents in question were before the Board but were inadvertently omitted when the administrative record was produced. As we understand Reeves's argument, the problem is the documents were never before the Board, although they should have been and Reeves was promised they would be.

5

*v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [judgment may not be reversed unless error caused miscarriage of justice].) As to Daleo's written recommendation and resume, he was permitted to address the Board and provided the Board with the same recommendation included in his written materials. In the report Daleo said: "It is my expert opinion that the subject room can be enclosed with glazed openings. It is my recommendation that the Board agree with my findings and approve the enclosed room and order the Building Official to issue a Certificate of Occupancy." At the hearing he stated: "What we need to get beyond this is can he have it enclosed space and my recommendation is by all means, absolutely, let him have his enclosed space and then deal with the other issues afterwards. That's my recommendation to the Board of Appeals. I am done." Reeves could not have been prejudiced by the lack of the written recommendation before the Board because the same recommendation was made verbally to the Board. Reeves makes no argument the omission of Daleo's resume prejudiced him in any way.

As to the revised legal brief, we have compared the original legal brief which is included in the administrative record and the modified brief, which is not. Nothing added to the modified brief would have affected the Board's review. Additionally, nothing removed from the original brief was prejudicial to Reeves. The major substantive change between the briefs was the reference to city codes in the original, and to state and model codes in the modified brief.

We conclude Reeves was not prejudiced by the failure to provide those documents to the Board, and remand to the Board is not called for.

II.

THE BOARD DID NOT RELY ON AN IMPROPER LEGAL THEORY

Reeves's appeal to the Board was filed pursuant to section 15.80.030 of the Newport Beach Municipal Code: "An application for appeal of orders, decisions or determinations made by the Building Official or the Fire Marshal shall be based on a

claim that the true intent of either the building code or fire code or their related rules, as adopted by the City, have been incorrectly interpreted, do not apply, or an alternate equally good or better form of construction or method of protection or safety exists.  The Building and Fire Board of Appeals shall have no authority to waive the requirements of the City's adopted building and fire codes or their related rules."  (Newport Beach Mun. Code, tit. 15, ch. 15.80, § 15.80.030.)

Reeves appealed from the "letter from Samir Ghosn, dated September 17, 2020 'Loggia must remain open to comply with local zoning and building codes' and 'water drainage must be addressed.'"  The appeal proposed as an alternative:  "To install glazing . . . of the exterior walls in the 3rd Floor Enclosed Loggia To prevent blowing rain/water intrusion."

At the hearing before the Board, City Attorney Jeremy Jung stated:  "I just want to frame the issues before the Board and that is the building official's determination was that drainage is required.  The Board has the opportunity to either affirm it or reverse it or somehow modify it, but that would be the decision, either uphold it, say drainage is required and it's up to [Reeves] and the – the designer to figure out how they want to comply with that or to say drainage isn't required, but one thing the Board can't do is say that the glazing or some other, kind of, windows or doors can be installed.  That would be one option that would not be available."

When a Board member asked, "what exactly we are or aren't approving," Jung replied, "It's the decision by [the] building official that drainage is required for this third floor space.  So, the Board can either uphold that saying drainage is required and then [Reeves] would figure out how best they want to comply with that or the Board can decide no, drainage isn't required, but then the option of allowing [Reeves] to go ahead and install glazing and other things would not be an available option.  If [Reeves] were to go ahead and do that, then, as Mr. Murillo indicated, that would be – that would pose

7

other issues with other parts of the code and then that would have to be taken up later on."

The chairperson of the Board stated: "I think the question came up concerning the Board establishing the reasoning for . . . Alternate Methods. We cannot do that. That is up to the purview of the building official and I don't think this Board has the ability to issue anything like that. The – from the looks of things the way I see it anyway, you would have to submit plans to the City requesting plan check for the adjustments that you've made, including making the space meet other aspects to the code, from a heating, ventilation, fire exiting, etcetera, etcetera standpoint and have the plans reviewed by the City and – and take that approach. I don't see any other direction from that."

"'As a general matter, courts will be deferential to government agency interpretations of their own regulations, particularly when the interpretation involves matters within the agency's expertise and does not plainly conflict with a statutory mandate.' [Citation.]" (*In re Cabrera* (2012) 55 Cal.4th 683, 690.) In the minute order, the trial court deferred to the City's interpretation of its own code and found Reeves "has not met his burden to establish that the City failed to proceed within a manner required by law."

Reeves contends the Board had the authority to determine glazing (i.e., adding windows to the loggia) would fix the problem. Even if Reeves were correct, this would only fix the drainage problem. It would not fix the other identified problem—the loggia must remain open in order to comply with zoning and building codes. The Board concluded it could not select an alternate method of compliance with building codes that would necessarily violate planning and zoning regulations. This interpretation of the Board's authority under section 15.80.030 of the City's municipal code is reasonable. We defer to the City's interpretation of its own regulations.

8

We conclude the Board was neither provided with nor did it base its decision on an improper legal theory.

### III.

### THE BOARD DID NOT ACT OUTSIDE ITS AUTHORITY

Reeves contends the Board acted outside its authority by mixing planning and zoning questions with building department questions.

Before the Board hearing, the City made clear that building code requirements and planning and zoning requirements are different issues handled by different City boards and commissions. At the hearing, Reeves's counsel conceded the Board "can only decide building code issues."

Reeves claims the Board nevertheless "made the hearing about 'Planning and Zoning.'" He claims a representative of the city planning department in attendance "had no authority to be present." That representative offered to address any planning and zoning issues, and stated "if the windows and the glazing are allowed to remain enclosed, I would run into an issue with compliance, (indiscernible) zoning code that would require variance from the planning commission to allow that additional space." Because the solution Reeves proposed was enclosing the space by adding windows, it was appropriate for the City's planning department representative to be present.

The Board does not have the authority to take action regarding a planning or zoning issue. This does not mean it must be blind to the planning and zoning ordinances of the City. During the Board hearing, Ghosn stated: "[Reeves's counsel] had indicated that we cannot mention planning and what have you and I think just to clarify this is that I think the intent is the Board is not going to rule on any planning issue. However, that said, I think Mr. Reeves is co-mingling the requirements . . . of planning and building to justify his building code analysis as done by his consultant."

The City's municipal code provides: "At an appeal hearing, the Building and Fire Board of Appeals shall consider only the same application, plans and project-

9

related materials that were the subject of the original order, decision, or determination unless a majority of the Building and Fire Board of Appeals decides new information shall be allowed." (Newport Beach Mun. Code, tit. 15, ch. 15.80, § 15.80.060(c).) Reeves's proposed alternate plan would have required a variance from the zoning department and a change in the approved plans. Under the Newport Beach Municipal Code, the Board did not have authority to approve Reeves's proposed alternative.

IV.

#### THE BOARD'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Code of Civil Procedure section 1094.5 authorizes the trial court to review administrative actions by writ of mandate to determine "whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) Because the administrative action here did not involve a fundamental, vested right, the trial court determined whether the administrative findings were "supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

"'"[T]he appellate court's function is identical to that of the trial court. It reviews the administrative record to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them."'" (*County of Fresno v. Fresno Deputy Sheriff's Assn.* (2020) 51 Cal.App.5th 282, 288.)[3]

In this case, Ghosn determined (1) drainage was required for the third floor loggia, and (2) the sliding door track on the loggia must be removed. In reviewing Ghosn's determination, the Board found the approved plans showed the loggia to be an exterior space with cased openings without glazing for windows and without the

_____

[3] Reeves contends the standard of review on appeal in this court is de novo because the interpretation of a statute is at issue. In none of the cases cited by Reeves was the court considering an appeal from an order on a petition for an administrative writ, and in none was the court considering a municipality's analysis of its own local regulations.

10

installation of a sliding door. Based on these findings, the Board affirmed Ghosn's decision to require Reeves to provide adequate drainage for the loggia and to remove the sliding door track. As explained *post*, substantial evidence supports the Board's findings.

The California Coastal Commission approved a development permit for plans including a "third story roof deck." The plans as approved by the City called for a non-glazed cased opening for the loggia and cased openings for the loggia windows. The approved plans included the following: "Add note on Elevation Plans: 'Loggia shall remain open.'" Reeves acknowledged he "understood the 'Approved' plans do not show glass" when "pleading with [the City] to grant occupancy."

At the hearing before the Board, Ghosn testified that at the time the plans were approved "the designer or architect . . . specifically understood the requirement for drainage and he put one outside and we were told, I think, based on, you know, staff that the area was to drain through here by floating this area, meaning if you put, like, a (indiscernible) finish or whatever finish you put in, you allow it to float and then, you know, it would drip off the edge and would go into this little drain and overflow. [¶] Granted, the plans are not perfectly addressing that specific issue, but—and again, you know, I cannot speak for what at the time the consulting group that helped us with the plan check was thinking, but that's where we are."

The interior areas of the loggia were finished for exterior use, meaning design features such as the flooring and the wall finish were designed to withstand the elements. In Ghosn's July 27, 2020 e-mail to Reeves, Ghosn noted the code requires "all surfaces subject to weather events to be sloped and have [a] drain and an overflow device to ensure against ponding." Specifically, the California Residential Code provides: "Unless roofs are sloped to drain over roof edges, roof drains shall be installed at each low point of the roof." (Cal. Res. Code, tit. 24, part 2.5, § R903.4.) Section R905.9.1

11

requires a slope of not less than two percent for drainage of built up roofs. (Cal. Res. Code, tit. 24, part 2.5, § R905.9.1.)[4]

If the loggia were to be enclosed by windows and a sliding door, it would turn the space into living space, and would exceed the amount of square feet permissible for the lot, as well as violating third floor setback requirements, pursuant to municipal planning and zoning regulations. (See, e.g., Newport Beach Mun. Code, tit. 20, §§ 20.18.030, 20.30.110, 20.48.180, 20.70.020.) Reeves was advised that enclosing the loggia violated local building codes and planning and zoning regulations and would require a variance from the City.

An inspection by the City dated September 23, 2020, noted the following corrections were required: "1. Remove threshold from deck. Acts as a dam. [¶] 2. Covered portion of deck does not drain."

Reeves requested a temporary certificate of occupancy "[t]o allow adequate time to resolve the issue of blowing rain/water intrusion in 'loggia' (3rd floor covered patio/porch)." Reeves was advised that in order to receive the certificate of occupancy, he would be required to "provide a permit within ? days to correct the drainage issue at the 3rd floor exterior loggia area."

In its recommendation to the Board, the City's staff cited the foregoing evidence and concluded: "Enclosing the Loggia conflicts with the approved plans for the project, that clearly and expressly state the Loggia is to remain open. The Loggia must remain open to comply with local Zoning and Building codes."

The City's staff further concluded: "In the development of the Loggia space, *it is clear that Mr. Reeves' intention was to enclose the Loggia [as] demonstrated by the installation of window and sliding glass door and installing a mini-split system for*

---

[4] The California Residential Code has been adopted by the City. (Newport Beach Mun. Code, § 15.05.010.)

12

*heating and cooling to condition the space*.  None of these features were part of the approved plans.  Building Inspector Bill Tuman issued the correction to remove the mini-split system and minimum of five-foot line connecting the system on July 10, 2020, and he returned to verify compliance with his corrections on July 15, 2020."  (Italics added.)

The Board's decision was supported by substantial evidence.  Therefore, we affirm the trial court's judgment.

## DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

13